IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | NO. 19-24-1 |
| | : | |
| BRANDON BAUTISTA | : | |

# MEMORANDUM

**KEARNEY, J.**                                                                                             **April 6, 2021**

    A twenty-seven-year-old man serving a federal sentence for conspiring to illegally purchase guns now moves for compassionate release arguing his temporomandibular joint syndrome (TMJ) and episodic obesity creates extraordinary and compelling reasons for his release given his fear of contracting COVID-19 at FCI Fort Dix. His medical records confirm no hypertension nor medical conditions placing him at a higher risk of contracting COVID-19. He nevertheless contracted COVID-19 approximately three months ago after moving to FCI Fort Dix although he never developed symptoms and cleared the infection. He declined the vaccine a couple weeks ago without explanation. We find no extraordinary and compelling reason to release this twenty-seven-year-old healthy man with TMJ who contracted COVID-19 without symptoms and then declined the vaccine. We deny his motion for compassionate release.

**I.     Facts**

    Knowing federal and Pennsylvania law prohibited him from purchasing a firearm, Brandon Bautista arranged for Luis Roman to purchase ten guns on his behalf and lie about the true purchaser on the required forms necessary to buy guns.[1]  Federal agents discovered four of these guns while searching Mr. Bautista's apartment and also found bulk marijuana and other evidence of marijuana distribution.  Mr. Bautista plead guilty to eight charges: one count conspiracy to make false statements to a federal firearm licensee; five counts aiding and abetting

making false statements to a federal firearm licensee; one count possession of marijuana with intent to distribute; and one count possession of a firearm in furtherance of drug trafficking.[2]

We accepted Mr. Bautista's plea on May 8, 2019,[3] and about a month later on June 13, 2019, we sentenced him to seventy-eight months imprisonment followed by three years supervised release.[4] He has served approximately thirty months. He is scheduled to be released on June 24, 2024 considering credit for good conduct.[5] Mr. Bautista began serving his sentence in FCI Schuylkill, but the Bureau of Prisons transferred him to FCI Fort Dix on December 7, 2020.

### *Mr. Bautista's relatively good health.*

Twenty-seven-year-old Mr. Bautista alleges he suffers from high blood pressure, obesity, and TMJ disease, but his medical records paint a different picture. While his medical records confirm his diagnosis of Temporomandibular Joint Syndrome, or TMJ,[6] they do not substantiate his claims of high blood pressure or obesity.

While Mr. Bautista's blood pressure and body mass index ("BMI") have, at times, exceeded healthy levels,[7] his most recent records show his body mass index and blood pressure within normal ranges. Three months ago, on January 9, 2021, medical professionals recorded Mr. Bautista's blood pressure as 107/61.[8] One month earlier on December 8, 2020, medical professionals noted Mr. Bautista did not have hypertension.[9] Medical professionals recorded Mr. Bautista's BMI as "23.0-23.9" on August 31, 2020, and noted this figure was both "normal" and "current."[10] These numbers reflect the most up to date measures of Mr. Bautista's blood pressure and BMI.

Mr. Bautista tested positive for COVID-19 on December 30, 2020.[11] Despite his infection, Mr. Bautista never developed symptoms and eventually cleared the infection.[12]

*Mr. Bautista's present risk of contracting COVID-19 at FCI Fort Dix.*

The Centers for Disease Control and Prevention tells us COVID-19 spreads "mainly through close contact from person to person, including between people who are physically near each other (within about 6 feet)."[13] "People who are infected but do not show symptoms can also spread the virus to others."[14] The CDC recommends adopting five preventative measures to slow the virus's spread: (1) "[w]ear a mask that covers your nose and mouth to help protect yourself and others"; (2) "[s]tay at least 6 feet . . . from others who don't live with you"; (3) "get a COVID-19 vaccine when it is available to you"; (4) "[a]void crowds and poorly ventilated spaces"; and (5) "wash your hands often with soap and water" or "use hand sanitizer if soap and water aren't available."[15]

COVID-19 poses a serious global public health risk. As of April 6, 2021, the Centers for Disease Control and Prevention reported a total of 30,532,965 cases of COVID-19 in the United States with 554,064 total deaths caused by the virus.[16] People of any age with the following conditions are at increased risk of severe illness from COVID-19: cancer; chronic kidney disease; COPD (chronic obstructive pulmonary disease); down syndrome; immunocompromised state (weakened immune system) from solid organ transplant; obesity (body mass index [BMI] of 30 kg/m2 or higher); heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies; sickle cell disease; pregnancy; a history of smoking; and Type 2 diabetes mellitus.[17] People of any age with the following conditions *might* be at an increased risk for severe illness from COVID-19: asthma (moderate-to-severe); cerebrovascular disease (affects blood vessels and blood supply to the brain); cystic fibrosis; hypertension or high blood pressure; immunocompromised state (weakened immune system) from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines;

3

neurologic conditions, such as dementia; liver disease; pulmonary fibrosis (having damaged or scarred lung tissues); neurologic conditions (like dementia); liver disease; a body mass index greater than 25 kg/m2; pulmonary fibrosis; Thalassemia (a type of blood disorder); and Type 1 diabetes mellitus.[18]

Mindful correctional facilities face unique challenges in controlling the transmission of COVID-19, the Centers for Disease Control and Guidance issued guidance to prisons and correctional facilities to help them prevent the spread of COVID-19.[19] Following this guidance, the Bureau of Prisons adopted aggressive safety measures, assuring "maintaining safety and security of [its] institutions is [its] highest priority."[20]

But despite these safety measures, FCI Fort Dix has struggled to contain COVID-19 in its facility, garnering attention from the media and lawmakers alike.  On January 15, 2021, Senators Menendez and Booker along with several members of the House of Representatives wrote a letter to Inspector General Michael Horowitz urging him to expand his investigation in FCI Fort Dix after the facility "once again had the most severe COVID-19 outbreak of all federal prisons."[21]  The Bureau of Prisons came under scrutiny just last month for failing to allocate emergency CARES Act funding to FCI Fort Dix despite its historically record high infection rate.[22]  As of April 6, 2021, FCI Fort Dix reports it has fifteen confirmed active COVID-19 cases among inmates in an inmate population of 2,738, and forty-three active cases among staff.[23] Since the outbreak began, the Bureau of Prisons has confirmed 2,030 COVID-19 cases at FCI Fort Dix having administered tests to 2,777 inmates.[24]  Two inmates at FCI Fort Dix have died from COVID-19.[25]

The Food and Drug Administration authorized three vaccines for Emergency Use in treating COVID-19, including vaccines from Pfizer, Moderna, and Johnson & Johnson.[26]  The

4

Pfizer vaccine is 91.3% effective against COVID-19, 100% effective against severe disease as defined by the CDC and 95.3% effective against severe COVID-19 as defined by the U.S. Food & Drug Administration.[27] Pfizer has not identified serious safety concerns associated with the vaccine.[28] To date, the Bureau of Prisons has administered 110,988 vaccines to inmates and staff nationwide. FCI Fort Dix has fully inoculated 159 inmates and 184 staff members.[29]

Officials at FCI Fort Dix offered Mr. Bautista a Pfizer vaccine on March 18, 2021, but he refused.[30] Mr. Bautista offers no explanation for his decision to decline the vaccine.

**II.    Analysis**

Mr. Bautista moves for compassionate release arguing his health conditions and FCI Fort Dix's perceived mishandling of the pandemic present an extraordinary and compelling reason for release. The United States opposes, arguing Mr. Bautista does not present an extraordinary and compelling reason for release because his health conditions are mild and under control, Mr. Bautista enjoys infection immunity, and he declined the Pfizer vaccine. We agree with the United States Mr. Bautista does not present an extraordinary and compelling reason for release requiring we deny his motion. We do not need to assess the danger he presents to the community if released and the sentencing factors under 18 U.S.C. § 3553(a).

Congress allows us to reduce a sentence through compassionate release if we determine: (1) the incarcerated movant meets administrative exhaustion requirements; (2) "extraordinary and compelling reasons"[31] warrant a reduction; (3) the reduction would be "consistent with any applicable policy statements issued by the Sentencing Commission," and (4) the applicable sentencing factors under 18 U.S.C. § 3553(a) warrant a reduction.[32] The applicable policy statements issued by the Sentencing Commission urge us to consider whether Mr. Bautista would

be a danger to the community if released.[33] A petitioner seeking compassionate release has the burden to prove extraordinary and compelling reasons exist.[34]

"[A] prisoner seeking release due to COVID-19 must at least show: (1) a sufficiently serious medical condition, or advanced age, placing the prisoner at a uniquely high risk of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held."[35]  Our Court of Appeals tells us "the existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit."[36] "'[G]eneralized COVID-19 fears and speculation' are insufficient to warrant release."[37]

Mr. Bautista fails to establish a "a sufficiently serious medical condition, or advanced age, placing the prisoner at a uniquely high risk of grave illness or death if infected by COVID-19."[38]  The Centers for Disease Control do not recognize TMJ as a condition placing an individual at higher risk for severe COVID-19 infection, and despite Mr. Bautista's claims of high blood pressure and obesity, his medical records confirm he has a normal BMI and healthy blood pressure.  Twenty-seven-year-old Mr. Bautista does not face increased risk on account of his age.  As Mr. Bautista does not have medical conditions placing him at a uniquely high risk of grave illness or death, he fails to establish an extraordinary or compelling reason for release.

Mr. Bautista's denial of the COVID-19 vaccine further weighs against finding an extraordinary and compelling reason for release.  Judge Beetlestone recently denied compassionate release for an incarcerated woman who refused the Moderna vaccine.[39]  In *United States v. Jackson*, the fifty-eight year old petitioner moved for compassionate release, arguing her age, obesity, diabetes, hypothyroidism, hypertension, asthma and high cholesterol placed her

at increased risk for developing severe illness from COVID-19.⁴⁰  Judge Beetlestone explained, "[u]nder normal circumstances, [petitioner's] age and medical condition would present 'a serious physical or medical condition that substantially diminishes the ability of a defendant to provide self-care within the environment of a correctional facility' in light of the COVID-19 . . . However, [petitioner] was offered the Moderna COVID-19 vaccine on January 6, 2021 and elected not to be vaccinated."⁴¹  She concluded, "it seems that [petitioner] has voluntarily declined to 'provide self care' and mitigate her risk of a severe COVID-19 infection."⁴²  Judge Beetlestone held, "[w]here [petitioner] bears the burden of demonstrating her entitlement to relief, the Court finds that her unexplained refusal to accept a COVID-19 vaccination when offered negates her otherwise compelling medical reasons for release."⁴³

Judge Bissoon reached a similar conclusion when the incarcerated person refused the COVID-19 vaccine.⁴⁴  She reasoned, "[w]hether that decision was animated by his present request for release, vaccine hesitancy, or both, the Court can only speculate.  His refusal is notable, however, given the widescale desperation – of many in the general public to acquire the same opportunity he has declined."⁴⁵  She clarified, "[w]hile, to be clear, the Court would deny his Motion in any event, it seems fair to conclude that his decision significantly undermines the premises of his Motion."⁴⁶

The Bureau of Prisons offered Mr. Bautista the Pfizer vaccine, and he turned it down. We agree with Judge Beetlestone and Judge Bissoon this refusal undercuts the premises of his motion which otherwise fails due to the lack of an extraordinary and compelling reason for release.⁴⁷

As Mr. Bautista does not present an extraordinary and compelling reason for his release, we deny his motion without assessing whether he presents a danger to the community or if Congress' sentencing factors warrant release.

### III. Conclusion

We deny Mr. Bautista's motion without prejudice because he fails to present extraordinary and compelling reasons for his compassionate release.

---

[1] ECF Doc. No. 75 at 33-35.

[2] ECF Doc. No. 67 ¶ 1.

[3] ECF Doc. No. 75 at 38.

[4] ECF Doc. No. 100.

[5] "Find an Inmate", Federal Bureau of Prisons, https://www.bop.gov/inmateloc/index.jsp (last visited Mar. 30, 2021).

[6] ECF Doc. No. 114 at 17.

[7] *See* ECF Doc. No. 109 at 3 (reporting Mr. Bautista's body mass index as 28.3 and his blood pressure as 135/80).

[8] ECF Doc. No. 114 at 4. The Centers for Disease Control advises, "a normal blood pressure level is less than 120/80 mmHg." Ctrs. for Disease Control and Prevention, *High Blood Pressure Symptoms and Causes*, https://www.cdc.gov/bloodpressure/about.htm#:~:text=%2F80%20mmHg.%E2%80%9D-,What%20are%20normal%20blood%20pressure%20numbers%3F,pressure%20in%20a%20healthy%20range (last visited Apr. 6, 2021).

[9] ECF Doc. No. 114 at 11.

[10] *Id.* at 17.

[11] *Id.* at 39.

[12] *Id.* at 37.

---

[13] Ctrs. for Disease Control and Prevention, *How COVID-19 Spreads*, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html (last updated March 17, 2021).

[14] *Id.*

[15] Ctrs. for Disease Control and Prevention, *Things to Know About the COVID-19 Pandemic*, https://www.cdc.gov/coronavirus/2019-ncov/your-health/need-to-know.html (last updated Jan. 5, 2021).

[16] Ctrs. for Disease Control and Prevention, *Coronavirus Disease 2019 (COVID-19)*, *United States COVID-19 Cases and Deaths by State*, https://covid.cdc.gov/covid-data-tracker/#cases_casesper100klast7days (last updated Apr. 6, 2021).

[17] Ctrs. for Disease Control and Prevention, *Coronavirus Disease 2019 (COVID-19), People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last updated Mar. 29, 2021).

[18] *Id.*

[19] Ctrs. for Disease Control and Prevention, *Coronavirus Disease 2019 (COVID-19)*, *Guidance for Correctional & Detention Facilities*, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last updated Feb. 19, 2021).

[20] Bureau of Prisons, *Updates to BOP Covid-19 Action Plan*, https://www.bop.gov/resources/news/20200319_covid19_update.jsp (last updated Mar. 19, 2020).

[21] KYW New Radio, *New Jersey lawmakers urge federal action on COVID-19 outbreak at FCI Fort Dix*, https://www.audacy.com/kywnewsradio/news/local/new-jersey-lawmakers-urge-action-on-covid-19-at-fci-fort-dix (Jan. 16, 2021).

[22] Burlington County Times, *NJ lawmakers question BOP about lack of FCI Fort Dix funding*, https://www.burlingtoncountytimes.com/story/news/2021/03/03/nj-lawmakers-question-bop-lack-fci-fort-dix-funding/6907445002/ (Mar. 5, 2021).

[23] Bureau of Prisons, *COVID-19 Cases*, https://www.bop.gov/ coronavirus/ (last visited Apr. 6, 2021).

[24] Bureau of Prisons, *COVID-19 Inmate Test Information*, https://www.bop.gov/coronavirus/ (last visited Apr. 6, 2021).

[25] *Supra*, note 23.

---

[26] Teresa Machemer, *FDA Approves Johnson & Johnson Vaccine, Another Valuable Tool Against Covid-19,* Smithsonian Magazine, (Mar. 2, 2021) available at https://www.smithsonianmag.com/smart-news/fda-authorizes-johnson-johnson-vaccine-heres-why-every-covid-19-vaccine-helps-180977122/.

[27] *Pfizer and Biontech Confirm High Efficacy and No Serious Safety Concerns Through Up to Six Months Following Second Dose in Updated Topline Analysis of Landmark COVID-19 Study*, (Apr. 1, 2021) available at https://www.pfizer.com/news/press-release/press-release-detail/pfizer-and-biontech-confirm-high-efficacy-and-no-serious

[28] *Id.*

[29] Bureau of Prisons, *COVID-19 Vaccine Implementation*, https://www.bop.gov/coronavirus/ (last visited Apr. 6, 2021).

[30] ECF Doc. No. 114 at 45.

[31] Application Note 1 to Section 1B1.13 of the United States Sentencing Guidelines outlines circumstances constituting "extraordinary and compelling reasons" under which district courts may reduce a term of imprisonment:

> (A) Medical Condition of the Defendant.—
>
> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
>
> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) **Age of the Defendant.**—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

> (C) **Family Circumstances.**—
>
> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) **Other Reasons.**—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. 1B1.13, Application Note 1(A)-(D).

[32] 18 U.S.C. § 3582.

[33] *See, e.g., United States v. Rodriguez*, 451 F. Supp. 3d 392, 406 (E.D. Pa. Apr. 1, 2020).

[34] *See, e.g., United States v. Epstein,* No. 14-287, 2020 WL 1808616, at *2 (D.N.J. Apr. 9, 2020) (noting a defendant possesses the burden to establish extraordinary and compelling reasons exist to justify compassionate release).

[35] *United States v. Tartaglione*, No. 15-491, 2020 WL 3969778, at *5 (E.D. Pa. July 14, 2020) (quoting *United States v. Somerville,* No. 12-225, 2020 WL 2781585, at *20 (W.D. Pa. May 29, 2020)).

[36] *United States v. Roeder*, 807 F. App'x 157, 161 n.16 (3d Cir. 2020); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering [the Bureau of Prison's] statutory role, and its extensive and professional efforts to curtail the virus's spread.").

[37] *United States v. Phillips*, No. 09-718, 2020 WL 5076753, at *4 (E.D. Pa. Aug. 27, 2020) (quoting *United States v. Upshur*, No. 18-124-2, 2020 WL 3128026, at *2 (E.D. Pa. June 12, 2020)) (denying compassionate release where the petitioner failed to demonstrate "more than mere speculative risk of exposure")).

[38] *Tartaglione*, 2020 WL 3969778, at *5.

[39] No. 07-40-2, 2021 WL 11459903 (E.D. Pa. Mar. 25, 2021).

[40] *Id.* at *1.

[41] *Id.* at *2.

11

---

[42] *Id.*

[43] *Id.*

[44] *United States v. Robinson*, No. 16-94, 2021 WL 719658, at *1 (W.D. Pa. Feb. 23, 2021).

[45] *Id.*

[46] *Id.*

[47] *See also United States v. Jackson*, No. 15-260(7), 2021 WL 806366, at *1-2 (D. Minn. Mar. 3, 2021) (explaining while a petitioner who declined the vaccine is "within his rights to refuse any treatment he wishes to forego, he cannot simultaneously claim that he must be released because of the risk of complications while refusing a vaccine that could virtually eliminate that risk."); *United States v. McBride*, No. 19-7, 2021 WL 354129, at *3 (W.D.N.C. Feb. 2, 2021) (explaining where petitioner rejected the COVID-19 vaccine, the "refusal to take preventative measures undermines his assertion that extraordinary and compelling reasons exist to warrant his release from prison"); *United States v. Lohmeier*, No. 12 CR 1005, 2021 WL 365773, at *2 (N.D. Ill. Feb. 3, 2021) (denying relief where petitioner "declined the opportunity to reduce his risk [of] exposure to COVID-19 dramatically" by refusing the vaccine twice); *United States v. King*, No. 07-40-2, 2021 WL 736422, at *2 (S.D.N.Y. Feb. 24, 2021) (concluding petitioner's circumstances were not "extraordinary and compelling" where he refused the COVID-19 vaccine).